903 P.2d 612

Maria A. TALLENT and David L. Tallent, wife and husband, Plaintiffs–Appellees,

v.

NATIONAL GENERAL INSURANCE COMPANY, a Missouri corporation, Defendant–Appellant.

No. 1 CA–CV 93–0396.

Court of Appeals of Arizona, Division 1, Department B.

April 4, 1995.

Review Granted Sept. 26, 1995.*

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Frank M. Fox, Christopher Robbins, Phoenix, for appellant.

Bilinski & Associates, P.C. by Susan C. Ellerhorst, Phoenix, for appellees.

## OPINION

LANKFORD, Presiding Judge.

National General Insurance Company ("National") appeals from the trial court's grant of summary judgment in favor of Maria and David Tallent on their declaratory judgment claim. This appeal presents one issue: Did National make an offer of underinsured motorist ("UIM") coverage sufficient under Ariz.Rev.Stat.Ann. ("A.R.S.") section 20–259.01(C)?

We hold that National's offer was inadequate because it did not inform the insureds of the nature of UIM coverage so that they could knowledgeably decide whether to purchase the coverage. Accordingly, we affirm the trial court's judgment in favor of the insureds.

The Tallents made a claim against National for losses due to Maria Tallent's injury in a 1988 motor vehicle accident. She settled her injury claim against the negligent driver for his insurance policy liability limits of $60,000. Mrs. Tallent then submitted a claim to

National for her UIM coverage. National's policy insured the Tallents with liability coverage of $100,000 but with UIM coverage of only $15,000.

The Tallents sought $100,000 in UIM coverage, contending that they were entitled to the higher amount because National had not offered them UIM coverage in limits not less than their liability limits as required by A.R.S. section 20–259.01(C). At the time the Tallents obtained their National policy, A.R.S. section 20–259.01(C) (1990)[1] provided in relevant part:

> Every insurer writing automobile liability or motor vehicle liability policies, as provided in subsection A of this section shall also *make available* to the named insured thereunder and shall by written notice *offer* the insured and at the request of the insured shall include within the policy underinsurance motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy.

(Emphasis added).

After National denied their claim and offered them the UIM coverage limit of $15,000, the Tallents filed a declaratory judgment action to determine the amount of UIM coverage. They subsequently moved for summary judgment, requesting a declaration that their policy afforded them $100,000 in UIM coverage because National's offer of UIM coverage did not comply with the statute.

National claimed to have offered UIM coverage to them by a form entitled "Arizona Notice," which stated: "This form is used for selecting (or changing) your Uninsured/Underinsured Motorists Coverage."[2] The form then showed available limits and corresponding premiums for uninsured and UIM coverages with boxes for the insured to check to indicate the levels of coverage desired. National's offer of UIM coverage did not describe the nature of UIM coverage.

Relying on *Giley v. Liberty Mutual Fire Insurance Co.,* 168 Ariz. 306, 812 P.2d 1124

(App.1991), the Tallents argued that because National's notice did not describe the coverage, it did not meet the requirement that insurers offer UIM coverage to new policyholders "in a way reasonably calculated to bring to the insured's attention that which is being offered." The Tallents maintained that as a matter of law, National had failed to satisfy the written offer requirement of section 20–259.01(C) and, as a result, they were entitled to UIM coverage in the amount of their liability limits of $100,000.

In its response and cross-motion for summary judgment, National argued that it had complied with the statute. According to National, its form set forth in clear, unambiguous language that it was offering both uninsured and underinsured motorist coverage in amounts up to the insured's bodily injury liability limits. It further asserted that its form satisfied the *Giley* requirement by reasonably apprising the insured of its offer of UIM coverage.

The trial court granted the Tallents' motion, denied National's motion, and declared that the Tallents were entitled to UIM coverage in the amount of their liability coverage. The court explained:

> [T]his Court believes it is bound by the reasoning of *Giley* which holds that in order to satisfy the requirement of A.R.S. § [20–259.01(C)] an insurer must offer underinsured motorist coverage "in a way reasonably calculated to bring to the insured's attention that which is being offered." The mere listing of "Underinsured Motorists Coverage" as available in certain amounts does not, without further explanation, in the Court's view, enable the consumer to assess in a meaningful way what is being offered and why it should be considered. The insured needs to be given such information regarding the coverage as to make the election or rejection of such coverage meaningful. An example (to meet the requirement that the nature of underinsured motorist coverage be explained at least in the minimum terms required to make an intelligent decision)

---

**1.** This provision now appears at A.R.S. § 20–259.01(B) (Supp.1994).

**2.** National's selection form is attached to this opinion as Appendix A.

would be to merely state after the heading "underinsured motorist coverage" such language as: "Provides bodily injury protection for you if you are injured in an accident caused by another driver who does not have liability insurance coverage or has an inadequate amount of such insurance."

Accordingly, the court entered judgment for the Tallents, and National timely appealed.

We must decide whether National's offer of UIM coverage complies with section 20–259.01(C). Because this issue involves statutory interpretation and application, it is a question of law that we review *de novo.* *See Libra Group, Inc. v. State,* 167 Ariz. 176, 179, 805 P.2d 409, 412 (App.1991).

The primary goal in statutory interpretation is to ascertain and give effect to the statutory meaning and the legislature's intent. *Lowing v. Allstate Ins. Co.,* 176 Ariz. 101, 103, 859 P.2d 724, 726 (1993). As we said about this very statute in *Stuart v. Insurance Co. of North America,* 152 Ariz. 78, 80–81, 730 P.2d 255, 257–58 (App.1986):

> When construing legislation, a court must determine and give effect to legislative intent behind the statute.... Where the words of the statute fail to reveal that intent, as is the case with this statute, and the legislative history does not shed light on the issue, a court must read the statute as a whole, considering its subject matter, effects, consequences, purpose and spirit.... Further, the court should construe the statute so as to give it a fair and sensible meaning.

*Id.* (citations omitted).

National argues on appeal that this statute simply requires insurance companies to "offer" UIM coverage up to the liability limits in the insured's policy; the statute does not require insurance companies to explain UIM coverage or promote increased UIM limits. According to National, the legislature merely required that some offer be made without specifying how the offer must be made.

The Arizona legislature has not defined the term "offer" as used in section 20–259.01, and the term is susceptible to different interpretations. We must therefore find the statute's meaning from its context and purpose. The purpose of section 20–259.01 is to protect the victims of financially irresponsible drivers. *Evenchik v. State Farm Ins. Co.,* 139 Ariz. 453, 458, 679 P.2d 99, 104 (App.1984). The statute's purpose is "to guarantee that responsible drivers will have an opportunity to protect themselves and their loved ones as they would others." *Ormsbee v. Allstate Ins. Co.,* 176 Ariz. 109, 112, 859 P.2d 732, 735 (1993). Thus, this statute is remedial and should be liberally construed to carry out the legislature's intent. *Evenchik,* 139 Ariz. at 458, 679 P.2d at 104.

Although the Arizona courts have not specifically determined whether an offer of UIM coverage such as National's satisfies section 20–259.01(C), recent Arizona cases have examined the sufficiency of other offers of UIM coverage. Those cases are helpful in determining what the legislature intended. In *Giley, supra,* Division Two of this Court considered whether the insurer had complied with the statute. The insured claimed that although the agent had described uninsured motorist coverage, he did not describe UIM coverage, but asked the insured to sign a form which the agent retained. The insured did not realize the form contained a written offer of UIM coverage. *Id.* In reversing summary judgment in favor of the insurer, the *Giley* court stated:

> [T]he phrase "make available" requires that the insurer offer such coverage in a way reasonably calculated to bring to the insured's attention that which is being offered. If [the insured's] testimony is credited, the agent did not do so.

*Id.* at 307, 812 P.2d at 1124.

In *State Farm Mutual Automobile Ins. Co. v. Ash,* 181 Ariz. 167, 888 P.2d 1354 (1994), this Court reviewed the legal sufficiency of the insurer's written offer of UIM coverage. In that case, the insurer sent a premium notice advising the insureds of the amount of premium necessary to increase uninsured and UIM coverages. The notice also referred the insureds to an accompanying brochure that explained the nature of UIM coverage.

The insureds in *Ash* contended that the insurer's offer failed the four-part test announced by the Minnesota Supreme Court in *Hastings v. United Pacific Ins. Co.*, 318 N.W.2d 849, 851–53 (Minn.1982). *Hastings* adopted the following requirements:

(1) notification must be commercially reasonable if the offer is made in other than face-to-face negotiations;

(2) the insurer must specify the limits of the optional coverage and not merely offer additional coverage in general terms;

(3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and

(4) the insurer must advise the insured that the optional coverage is available for a relatively modest premium increase.

*Id.* Noting that Arizona had not adopted the *Hastings* requirements, the *Ash* court nevertheless concluded that the insurer's offer met those criteria.[3] 181 Ariz. at 175, 888 P.2d at 1362.

Most courts construing statutes similar to Arizona's have held that offers like National's are ineffective. For example, in analyzing the Minnesota mandatory offer statute, the *Hastings* court affirmed judgment in favor of the insured because the insurer's offer of UIM coverage did not enable the insured to make an intelligent decision concerning the coverage. The *Hastings* court required that "the insurer intelligibly advise the insured of the nature of the optional coverage." 318 N.W.2d at 852. This factor is critical because

the technical language of insurance is not easily understood by many, if not most, purchasers of insurance. "Underinsured motorist coverage" is an example of language that may not convey a clear message to the uninitiated insured, who might well understand it to be supplemented coverage for the insured whose own liability coverage for bodily injury to others is inadequate. To an insured with ample bodily injury liability coverage, the listing of "underinsured motorist coverage" as an

available option, without further explanation, does not constitute a meaningful offer sufficient to enable the insured to assess why the offer should be carefully considered.

*Id. Cf. Thompson v. Gov't Employees Ins. Co.*, 122 Ariz. 18, 21–22, 592 P.2d 1284, 1287–88 (App.1979) ("The language used in an insurance policy must be viewed from the standpoint of the average layman who is untrained in the law or the field of insurance.").

*Cloninger v. National General Ins. Co.*, 109 Ill.2d 419, 94 Ill.Dec. 549, 488 N.E.2d 548 (1985), involved the same insurer which appeals here. The Illinois Supreme Court affirmed a summary judgment in favor of the insured, which had declared that the insured had UIM coverage of the maximum amount available. Noting that the legislature did not specifically define the term "offer," the *Cloninger* court believed the legislature intended the mandated offer to "provide the insured with enough information regarding underinsured-motorist coverage to allow the insured to make an intelligent decision of whether such coverage should be elected or rejected. Such an intelligent decision cannot be made unless an explanation of the coverage is supplied." *Id.* 94 Ill.Dec. at 551, 488 N.E.2d at 550. The *Cloninger* court found the *Hastings* test to be helpful in determining whether a proper offer had been made in the case before it.

Similarly, in *Mollena v. Fireman's Fund Ins. Co. of Hawaii*, 72 Haw. 314, 816 P.2d 968, 971 (1991), the Hawaii Supreme Court reversed summary judgment in favor of the insurer and remanded the case for entry of judgment in favor of the insureds. The *Mollena* court interpreted a mandatory offer statute to require a legally sufficient offer of UIM coverage as described in *Hastings*. *Id.* 816 P.2d at 971. *See also Allstate Ins. Co. v. Parfrey*, 830 P.2d 905 (Colo.1992) (insurer must notify insureds of nature and purpose of UIM coverage to enable insureds to make informed decision on purchase of UIM cover-

---

**3.** The dissent notes that the *Ash* court considered the insurer's UIM selection form, which was nearly identical to National's form, to be an adequate offer under section 20–259.01(C). However, the selection form in *Ash* contained a reference to an enclosed insert which "succinctly explained" the UIM coverage.

age); *Tucker v. Country Mut. Ins. Co.*, 125 Ill.App.3d 329, 80 Ill.Dec. 610, 465 N.E.2d 956 (1984) (offer of UIM coverage need not be in the nature of a legal offer but definite statement of terms must be communicated to the insured to make offer meaningful); *Johnson v. Concord Mutual Ins. Co.*, 450 Pa. 614, 300 A.2d 61 (1973) (one-line UIM coverage waiver provision was inadequate under statute because it did not contain language that clearly and specifically apprised insured of nature of the coverage); *State Farm Mut. Auto. Ins. Co. v. Wannamaker*, 291 S.C. 518, 354 S.E.2d 555 (1987) (court adopted *Hastings* test and interpreted statutory "shall also offer" language to require insurers to provide insureds with adequate information to enable insureds to make intelligent decisions on UIM coverage); *Bias v. Nationwide Mut. Ins. Co.*, 179 W.Va. 125, 365 S.E.2d 789 (1987) (UIM offer required by statute must state, in definite, intelligible, and specific terms, nature of coverage offered). *But see Silver v. Slusher*, 770 P.2d 878 (Okla.1988), *cert. denied*, 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989) (under statute language requiring increased limits of UIM coverage to be "offered," insurer had no duty to provide explanation of UIM coverage to insureds).

The notice provided to the policyholders in this case was a brief form listing the limits available for uninsured and UIM coverages with boxes to check the desired limits. The form provided a place for the insured to sign and date the form. However, it gave no description or explanation of the nature of uninsured and UIM coverage. In considering the same form, the *Cloninger* court held that although the notice of UIM coverage was made in a commercially reasonable manner, and the limits of coverage and premiums were set forth, the insurer failed to intelligibly advise the insured of the nature of UIM coverage.

■ We likewise conclude that National's notice of UIM coverage does not comply with the requirement for a written offer under section 20–259.01(C). To constitute a sufficient offer, the writing must provide the insured with some information about the nature of UIM coverage to enable the insured

to make an informed choice of coverage limits. Like other courts, we are concerned that typical insureds may lack an understanding of UIM coverage. For example, they may mistake the term "underinsured motorist coverage" to mean additional liability coverage. *See Hastings*, 318 N.W.2d at 852. Without any information, an insurer's "offer" of coverage cannot fulfill what the legislature intended: a "guarantee ... [of] an opportunity to protect [insureds] and their loved ones ..." *Ormsbee*, 176 Ariz. at 112, 859 P.2d at 735.

■ The dissent treats the offer of UIM coverage as an ordinary offer to contract. But this is not an ordinary offer. It is an offer which the legislature has required insurers to make, and to do so in writing. This provision is part of the legislative plan to "maximize uninsured and underinsured motorist coverage." *Stuart v. Insurance Co. of North America*, 152 Ariz. 78, 82, 730 P.2d 255, 259 (App.1986). This protects innocent victims from potentially tragic and catastrophic losses caused by the negligence of those who are not financially responsible for their actions. *See Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985).

The insurer's UIM coverage offer is therefore not an ordinary "offer," either in the legal sense or in the ordinary meaning of that term. It is instead an offer regulated by statute and infused with public policy concerns.

Requiring the offer to include an explanation of the coverage imposes no great burden on insurers. In most cases, as suggested by the trial court and by our decision in *Ash*, only a sentence or two would be necessary to explain UIM coverage so that the average insured could understand it. The explanation need not address every question that an insured might have about such coverage; the required offer need only succinctly describe the nature of UIM coverage in understandable language. *See Taruc v. State Farm Mut. Auto. Ins. Co.*, 218 Ill.App.3d 51, 161 Ill.Dec. 7, 578 N.E.2d 134 (1991) (law that requires insurers to offer increased coverage option does not require every contingency—such as whether UIM coverage applies when the

named insured is not occupying a covered vehicle—to be explained in detail).

National argues that the legislature would have included language in A.R.S. § 20–250.01(C) requiring insurers to explain UIM in their offers if it had intended them to do so. However, we reject the proposition that the legislature's silence on the topic indicates an intent that an offer incomprehensible to the average insured would comply with the statute. In view of the purpose of this legislation, we cannot conclude that the statute is satisfied by an offer which is so vague or incomplete that it may be ineffectual.

Furthermore, we note that the legislature amended the mandatory provision statute in 1992. The amended version provides *prima facie* validity for offers made with a form approved by the state. *See* A.R.S. § 20–259.01(B).[4] The selection form contains the following:

### DO NOT SIGN UNTIL YOU READ

You have a legal right to purchase *both Un*insured and *Under*insured Motorist coverages with the proposed automobile liability policy. *THESE COVERAGES PROTECT YOU, YOUR FAMILY AND YOUR PASSENGERS. LIABILITY COVERAGE DOES NOT IN MOST CASES.*

Arizona Department of Insurance Uninsured and Underinsured Motorist Coverage Selection Form. The form also includes an explanation of uninsured motorist and UIM coverages, along with a statement that the policy will provide uninsured/UIM coverage in the same amount as the liability limit, unless other options are selected.

The 1992 amendment and the approved selection form reflect the legislature's continuing concern for protecting responsible drivers and their passengers from financially irresponsible drivers. We believe the legislature, in amending the statute and creating a

"safe harbor" for insurers, confirmed that more is needed to effectively offer UIM coverage than a form containing a box marked "underinsured motorist coverage" for the insured to mark if such coverage is desired.

■ National's notice of UIM coverage contained no explanation of the UIM coverage. Therefore, it was an insufficient offer of UIM coverage as a matter of law, and the trial court correctly granted summary judgment in favor of the Tallents. Because an insurer's statutory obligation to offer UIM coverage is mandatory, the proper remedy for a legally insufficient offer is to include the coverage in the policy by operation of law. Generally, the insured is entitled to coverage in the amount equal to the bodily injury liability limits of the policy. *Insurance Co. of North America v. Santa Cruz*, 166 Ariz. 82, 85, 800 P.2d 585, 588 (1990). Accordingly, the trial court correctly ruled that the UIM coverage afforded the Tallents is the $100,-000 limit of their bodily injury liability coverage.

■ The Tallents request that we award their attorneys' fees incurred on appeal pursuant to A.R.S. section 12–341.01(A). Fees can be awarded because this action arises out of a contract of insurance. In our discretion, we grant fees to the Tallents. They may establish the amount of the award by complying with Rule 21, Arizona Rules of Civil Appellate Procedure.

In summary, we hold that a written offer of UIM coverage under A.R.S. section 20–259.01(C) must provide the insured with enough information concerning the nature of the coverage to enable the insured to make an informed decision. National's notice, which contained no explanation of the nature of UIM coverage, was an insufficient offer as a matter of law. Accordingly, we affirm the trial court's judgment for the Tallents.

EHRLICH, J., concurs.

---

4. A.R.S. section 20–259.01(B) provides:
   Every insurer writing automobile liability or motor vehicle liability policies shall also make available to the named insured thereunder and shall by written notice offer the insured and at the request of the insured shall include within the policy underinsurance motorist coverage which extends to and covers all persons in-

sured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy. *The selection of limits or rejection of coverage by a named insured or applicant on a form approved by the director shall be valid for all insureds under the policy....*

TOCI, Judge, dissenting.

I respectfully dissent. The majority concludes that, because the legislature has not defined the term "offer" in the statute, the statute is ambiguous. Building on this proposition, the majority applies the rules of statutory construction and writes into section 20–259.01 a provision that an insurer explain the nature of underinsured motorist ("UIM") coverage. According to the majority, the statute should read as follows:

> Every insurer writing automobile liability or motor vehicle liability policies . . . shall also make available to the named insured thereunder and by written notice offer *and explain to the insured the nature of underinsured motorist coverage* and at the request of the insured shall include within the policy underinsurance motorist coverage. . . .

I disagree with the majority's basic proposition that the word "offer" is ambiguous. As our supreme court has stated, " '[t]here is no magic in statutory construction and no legal legerdemain should be used to change the meaning of simple English words.' " *St. Paul Fire & Marine Ins. Co. v. Gilmore*, 168 Ariz. 159, 164, 812 P.2d 977, 982 (1991) (quoting *Kilpatrick v. Superior Court*, 105 Ariz. 413, 421, 466 P.2d 18, 26 (1970)). Accordingly, courts must refrain from finding "ambiguity in the ordinary words of a statute." *Id.* Here, the meaning of the statute is clear: the insurer shall by written notice offer and make available UIM coverage. The plain meaning of the verb "offer" is "[to] bring to or before; to present for acceptance. . . ." *Black's Law Dictionary* 1081 (6th ed. 1990). Thus, in the context of section 20–250.01, the word "offer" clearly means to bring to the insured or present for the insured's acceptance UIM coverage.

Nevertheless, even assuming for the purpose of argument that the word "offer" itself is ambiguous, the history of section 20–259.01 reveals that the legislature did not intend to require insurers to describe UIM coverage to their insureds. In 1972, the statute was amended to provide that the insured "shall also *make available* to the named insured . . . at his option, additional uninsured motorist coverage. . . ." 1972 Ariz.Sess.Laws 157,

§ 1 (emphasis added). In *McCloe v. Utah Home Fire Insurance Co.*, 121 Ariz. 402, 404, 590 P.2d 941, 943 (App.1978), we held that the language "make available" in section 20–259.01 did not impose "an affirmative obligation upon insurers to give their insureds actual personal knowledge of such an option." In 1981, the legislature responded to our holding in *McCloe*. It amended the statute to place an affirmative obligation on the insurer to give written notice to the insured of the availability of uninsured motorist ("UM") coverage. *Stuart v. Insurance Co. of N. Am.*, 152 Ariz. 78, 82, 730 P.2d 255, 259 (App.1986).

The 1981 amendment to the statute, section 20–259.01(C), required that insurers *offer* additional UM and UIM coverage *by written notice*. 1981 Ariz.Sess.Laws 224. The legislature retained the original language of the statute (every insurer shall "make available" UM coverage), held by *McCloe* to be inadequate to establish an obligation on the insurer to give written notice of the availability of UM coverage. The legislature simply added the words "and shall by written notice offer the insured [UM and UIM coverage]." Thus, after amendment, section 20–259.01(C) read as follows: "Every insurer . . . shall also make available to the named insured thereunder and shall by written notice offer the insured and at the request of the insured shall include within the policy [UIM] coverage. . . ." 1981 Ariz.Sess. Laws 224. In *Stuart*, we observed that "the language in question was intended only to require insurers to offer their new automobile liability policy customers, *affirmatively and in writing*, [UM and UIM] coverage with limits up to those selected for bodily injury liability coverage." 152 Ariz. at 83, 730 P.2d at 260 (emphasis added). Thus, viewed in light of its history, section 20–259.01(C)'s provision that an insurer "shall by written notice offer the insured . . . [UIM] coverage" does not require a description of UIM coverage.

Neither does *Giley v. Liberty Mutual Fire Insurance Co.*, 168 Ariz. 306, 812 P.2d 1124 (App.1991), cited by the majority, imply such a requirement. The issue in *Giley* was not the sufficiency of the insurer's written offer of UIM coverage, but whether the insured was misled into thinking she was signing an insurance application rather than a rejection of UIM coverage. There, the insurer handed

the insured a form that the insured believed to be an application for insurance. The form, however, contained an offer of UIM coverage. The insurer told the insured to sign the form if she desired coverage. Based on the insurer's representations, the insured signed the form without reading it. The insured's bare signature constituted a rejection of UIM coverage.[5] At issue, then, was the insurer's intentional or negligent failure to inform the insured about the true character of the form. Because the insured never read the form, the substance of the offer within the form was not an issue.

In *Giley*, Division Two held that, by misleading the insured about the true content of the form, the insurer failed to satisfy section 20–259.01's requirement that the insurer make UIM coverage available to the insured. The court stated that "the phrase 'make available' requires that the insurer offer such coverage in a way reasonably calculated to bring to the insured's attention that which is being offered." *Id.* Both the majority and the trial court rely on this statement, but in context, the statement does not support the proposition that section 20–259.01(C) requires that an offer of UIM coverage must be accompanied by an explanation of such coverage.

The majority also relies on the 1992 amendment to section 20–259.01(C). This amendment states: "The selection of limits or rejection of coverage on a form approved by the director, by a named insured or applicant shall be valid for all insureds under the policy...." 1992 Ariz.Sess.Laws 147. The majority notes that the director has, pursuant to this statute, adopted a form that contains an explanation of UIM coverage. According to the majority, the 1992 amendment to section 20–259.01(C) indicates that "more than an abbreviated form is needed to effectively offer UIM coverage." I respectfully disagree. The statutory amendment contains no requirement that an offer of UIM coverage contain an explanation of such coverage. The fact that the director has ex-

plained UIM coverage in the form adopted by him adds nothing to the discussion.

Finally, the majority argues that *State Farm Automobile Insurance Co. v. Ash*, 181 Ariz. 167, 888 P.2d 1354 (App.1994), supports the view that the legislature intended that all offers of UIM coverage contain a description of such coverage. Again, I disagree. In *Ash*, the insurer both urged this court to adopt the *Hastings* [6] test and argued that its offer of UIM coverage satisfied that test. The *Ash* court, however, refrained from adopting the *Hastings* test. Although the court eventually applied the *Hastings* test to the insurer's offer, it may have done so for reasons of expediency. But regardless of the *Ash* court's rationale for applying the *Hastings* test, the fact remains that the court did not even suggest that the legislature intended to adopt that test.

In fact, the *Ash* court suggested the opposite. The offer given by the insurer in *Ash* was nearly identical to the offer at issue here. The offer in *Ash* stated: " 'IF YOU WOULD LIKE [UM AND UIM] COVERAGE EQUAL TO YOUR BODILY INJURY LIABILITY LIMITS OF XXX/XXX, CHECK HERE ___ AND PAY $XXXX.XX.' " 181 Ariz. at 175, 888 P.2d at 1362. As was the case here, this offer did not describe UIM coverage. Yet, the *Ash* court stated, *"This language was clearly an offer." Id.* (emphasis added). Because section 20–259.01(C) requires insurers to merely "offer" UIM coverage, *Ash* implies that the legislature did not intend that an insurer's offer of UIM coverage contain an explanation of such coverage.

In sum, because the language and history of section 20–259.01(C) clearly reflect no legislative requirement that the insurer give a written explanation of UIM coverage, the adoption of the *Hastings* rule is, in my view, not appropriate. Although "typical insureds may lack an understanding of UIM coverage," it does not follow that the legislature intended to invalidate an offer of UIM cover-

---

5. The *Giley* court did not expressly discuss what constituted the insured's rejection of UIM coverage, but the court stated that the insured signed a form that contained an offer for UIM coverage. We infer from these facts that to accept UIM coverage, the insured had to do more than just sign the form. On forms commonly used in the

industry, the insured, to purchase UIM coverage, must check a box for the amount of UIM coverage desired.

6. *Hastings v. United Pacific Ins. Co.*, 318 N.W.2d 849 (Minn.1982).

age that does not explain such coverage. Nor should we. I would conclude that National's offer of UIM coverage to the Tallents complied with the statute.

## APPENDIX A

### NATIONAL GENERAL INSURANCE COMPANY
#### Arizona Notice

This form is used for selecting (or changing) your Uninsured/Underinsured Motorists Coverage.

#### Uninsured Motorists Coverage

| Option (Check One) | Limits* | Semiannual Premium Territories 15, 16, 17 | All Other Territories |
|---|---|---|---|
| ☐ | $ 15,000/ 30,000 | $14 | $ 8 |
| ☐ | 20,000/ 40,000 | 16 | 10 |
| ☐ | 25,000/ 50,000 | 17 | 11 |
| ☐ | 50,000/100,000 | 18 | 12 |
| ☐ | 100,000/300,000 | 19 | 13 |

*The selected limits cannot be greater than your Bodily Injury Liability Limits.

#### Underinsured Motorists Coverage

| Option (Check One) | Limits* | Semiannual Premium (All Territories) |
|---|---|---|
| ☐ | $ 15,000/ 30,000 | $5 |
| ☐ | 20,000/ 40,000 | 6 |
| ☐ | 25,000/ 50,000 | 6 |
| ☐ | 50,000/100,000 | 8 |
| ☐ | 100,000/300,000 | 9 |

*The selected limits cannot be greater than your Uninsured Motorists Coverage Limits.

Zip/Policy Number: _____

Name (Please Print): _____

Signature: _____    Date: _____

A 04 02 (Ed. 1-85)                                                      007461