SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| LUIS BALLESTEROS and ALMA BALLESTEROS, husband and wife; GUADALUPE PORTILLO; GERARDO PORTILLO; RICARDO PORTILLO; MANUEL PORTILLO; RUBEN PORTILLO; GUADALUPE PORTILLO JR.; and PATRICIA YERENA, | ) Arizona Supreme Court ) No.  CV-10-0026-PR ) ) Court of Appeals ) Division Two ) No.  2 CA-CV 09-0123 ) ) |
| Plaintiffs/Appellees, | ) Pima County ) Superior Court ) No.  C20050987 |
| v. | ) ) |
| AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, a foreign corporation doing business in the state of Arizona as AMERICAN FAMILY INSURANCE COMPANY; AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a foreign corporation doing business in the state of Arizona; SHIRLEE KOPIN; and SHAWN D. MORRIS, | ) ) **O P I N I O N** ) ) ) ) ) ) ) ) ) ) |
| Defendants/Appellants. | ) ) |

Appeal from the Superior Court in Pima County
The Honorable John E. Davis, III, Judge
The Honorable Stephen C. Villarreal, Judge

**REVERSED AND REMANDED**
_____

Opinion of the Court of Appeals, Division Two
223 Ariz. 269, 222 P.3d 292 (2009)

**VACATED**
_____

LAW OFFICE OF ELLIOT GLICKSMAN, P.L.L.C.                Tucson
     By   Elliot A. Glicksman

And

GABROY, ROLLMAN, & BOSSE, P.C.                                    Tucson
       By   John Gabroy
            Richard A. Brown
Attorneys for Luis Ballesteros, Alma Ballesteros,
Guadalupe Portillo, Gerardo Portillo, Ricardo Portillo,
Manuel Portillo, Ruben Portillo, Guadalupe Portillo Jr.,
and Patricia Yerena

LEWIS AND ROCA, L.L.P.                                           Phoenix
       By   Steven J. Hulsman
            Brenden J. Griffin
            Lawrence A. Kasten
Attorneys for American Standard Insurance Company
of Wisconsin, American Family Insurance Company,
American Family Mutual Insurance Company,
Shirlee Kopin, and Shawn D. Morris

MODRALL, SPERLING, ROEHL, HARRIS, & SISK, P.A.    Albuquerque, NM
       By   Brian K. Nichols
Attorney for Amicus Curiae Progressive Casualty
Insurance Company

EHMANN DECIANCIO, P.L.L.C.                                        Tempe
       By   Joel DeCiancio
            Christopher Robbins
Attorneys for Amici Curiae National Association
of Mutual Insurance Companies and Property
Casualty Insurers

THE HASSETT LAW FIRM, P.L.C.                                     Phoenix
       By   Myles P. Hassett
            Lucas N. Frank
Attorneys for Amicus Curiae Independent Insurance
Agents and Brokers of Arizona

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                         Phoenix
       By   Lynette J. Evans, Assistant Attorney General
Attorneys for Amicus Curiae Christina Urias, Director,
State of Arizona Department of Insurance

LAW OFFICES OF DAVID L. ABNEY                                    Phoenix
       By   David L. Abney
Attorneys for Amici Curiae Arizona Trial Lawyers
Association and Arizona Association for Justice

BROENING, OBERG, WOODS, & WILSON, P.C.                          Phoenix
     By   James R. Broening
          Robert T. Sullivan
          Brian W. Purcell
Attorneys for Amicus Curiae Farmers Insurance
Company of Arizona

_____

**B E R C H,** Chief Justice

¶1        Arizona Revised Statutes (A.R.S.) section 20-259.01 (Supp. 2009)[1] requires insurers to offer uninsured motorist (UM) and underinsured motorist (UIM) coverage to their insureds by giving them a "written notice."  The issue in this case is whether the insurer may satisfy this statutory requirement by providing an Insurance Department-approved English-language form to a Spanish-speaking insured.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[2]

¶2        Luis Ballesteros purchased an automobile insurance policy from American Standard Insurance Company of Wisconsin. Because Ballesteros's primary language is Spanish, a Spanish-speaking member of the insurance agent's staff helped Ballesteros complete the application.  The agent then gave Ballesteros an English-language form, approved by the Arizona

---

[1]   Ballesteros purchased his policy in 2001.  Because the version of § 20-259.01 at that time did not materially differ from the current statute, we cite the current version.

[2]   We view the facts in the light most favorable to American Standard, the party against whom partial summary judgment was entered.  *Tarron v. Bowen Mach. & Fabricating, Inc.*, 225 Ariz. 147, 151 ¶ 16, 235 P.3d 1030, 1034 (2010).

Department of Insurance (DOI), on which to select or reject UM/UIM coverage. Ballesteros signed the form, indicating on it that he declined such coverage.

¶3        Several months later, Ballesteros's mother-in-law, an insured under the policy, died in a collision with an uninsured driver. Ballesteros made a claim for UM coverage, which was denied. He sued for breach of contract, claiming that because American Standard failed to comply with A.R.S. § 20-259.01, UM coverage should be included in his policy by operation of law.[3] *See Ins. Co. of N. Am. v. Superior Court (Villagrana)*, 166 Ariz. 82, 85-86, 800 P.2d 585, 588-89 (1990) (holding that the "appropriate remedy" for failure to make the statutorily required offer of UM coverage "is to make such coverage part of the contract by operation of law").

¶4        The trial court granted partial summary judgment to Ballesteros, concluding that American Standard violated § 20-259.01 by not offering him UM/UIM coverage on a Spanish-language form. The court reasoned that the English DOI-approved UM/UIM selection form was not "reasonably calculated to bring to [Ballesteros's] attention that which was being offered" and that, to satisfy § 20-259.01, the written offer of UM/UIM

---

[3]        Ballesteros also alleged several non-contractual claims such as bad faith, consumer fraud, breach of fiduciary duty, negligence, and negligent misrepresentation, which have not been resolved and are not at issue in this appeal.

coverage to a Spanish-speaking insured must be in Spanish.

¶5        The court of appeals reversed the partial summary judgment in favor of Ballesteros, but held that American Standard was not entitled to judgment on its cross-motion for summary judgment on the contract claim. *Ballesteros v. Am. Standard Ins. Co.*, 223 Ariz. 269, 271-72 ¶ 2, 222 P.3d 292, 294-95 (App. 2009). The court concluded that the use of a DOI-approved UM/UIM selection form did not allow American Standard to sail into a "safe harbor" that automatically satisfied § 20-259.01. *Id.* at 277-78 ¶ 26, 222 P.3d at 300-01. It determined that although American Standard was not statutorily required to provide Ballesteros a Spanish-language form, factual questions remained as to whether American Standard made Ballesteros sufficiently aware of the offer of UM/UIM coverage through other communications. *Id.* at 278-79 ¶¶ 28-31, 222 P.3d at 301-02.

¶6        We granted review of Ballesteros's petition to determine whether an insurer must provide a Spanish-language form to a Spanish speaker to comply with § 20-259.01. We also granted review of American Standard's cross-petition to determine whether, by using a DOI-approved UM/UIM selection form, American Standard complied with the statute. *See* A.R.S. § 12-120.24 (2003); *see also* Ariz. Const. art. 6, § 5, cl. 3 (conferring jurisdiction).

## II. DISCUSSION

¶7  Section 20-259.01(A) requires insurance companies to offer UM coverage.  It provides, in relevant part, as follows:

> Every insurer writing automobile liability or motor vehicle liability policies shall make available to the named insured thereunder and by written notice offer the insured and at the request of the insured shall include within the policy uninsured motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy.  The selection of limits or rejection of coverage by a named insured or applicant on a form approved by the director is valid for all insureds under the policy.

Section (B) imposes the same requirements for UIM coverage. A.R.S. § 20-259.01(B).  We interpret statutes de novo, *Steven H. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 566, 570 ¶ 14, 190 P.3d 180, 184 (2008), attempting "to give effect to the intent of the legislature," *In re Estate of Winn*, 214 Ariz. 149, 151 ¶ 8, 150 P.3d 236, 238 (2007).  We also review summary judgment rulings de novo.  *Espinoza v. Schulenberg*, 212 Ariz. 215, 216-17 ¶ 6, 129 P.3d 937, 938-39 (2006).

¶8  In 1965, the legislature first required that all automobile insurance policies include minimum levels of UM coverage.  1965 Ariz. Sess. Laws, ch. 34, § 1 (1st Reg. Sess.).  Several years later, the legislature added the requirement that insurers "make available" higher amounts of UM coverage.  1972 Ariz. Sess. Laws, ch. 157, § 1 (2d Reg. Sess.).  In 1981, the

legislature amended the statute to require insurers to include minimum levels of UIM coverage and to both "make available" and "by written notice offer" UM/UIM coverage in amounts equal to the liability limits for bodily injury or death under the policy. 1981 Ariz. Sess. Laws, ch. 224, § 1 (1st Reg. Sess.). Just one year later, the legislature removed the requirement of mandatory minimum UIM coverage, 1982 Ariz. Sess. Laws, ch. 298, § 1 (2d Reg. Sess.), and it eliminated mandatory minimum UM coverage in 1993, 1993 Ariz. Sess. Laws, ch. 1, § 3 (5th Spec. Sess.). Although the legislature eliminated mandatory UM/UIM coverage, it nonetheless maintained the requirement that insurers "make available" and "by written notice offer" both types of coverage.

¶9 In 1992, the legislature also amended the statute to provide that "[t]he selection of limits or rejection of [UM/UIM] coverage by a named insured or applicant on a form approved by the director [of the Department of Insurance] shall be valid for all insureds under the policy." 1992 Ariz. Sess. Laws, ch. 147, § 1 (1st Reg. Sess.); 1994 Ariz. Sess. Laws, ch. 304, § 1 (2d Reg. Sess.).

**A. Interpreting "make available" and "by written notice offer"**

¶10 This case requires us to determine what A.R.S. § 20-259.01 means by requiring insurers to "make available" UM/UIM

coverage and to offer such coverage "by written notice."

¶11    In *McCloe v. Utah Home Fire Insurance Co.*, 121 Ariz. 402, 404, 590 P.2d 941, 943 (App. 1978), the court of appeals held that the 1972 version of the statute, which required insurers to "make [UM coverage] available" to their insureds, did not impose "an affirmative obligation upon insurers to give their insureds actual personal knowledge of such an option." Thus, the only requirement imposed by the "make available" language was that insurers be willing to provide such coverage. In 1981, the legislature amended the statute to require that insurers "by written notice offer" UM coverage, for the first time imposing a requirement that insurers bring the availability of such coverage to the insured's attention. 1981 Ariz. Sess. Laws, ch. 224, § 1 (1st Reg. Sess.).

¶12    The court of appeals interpreted the amended statute in *Giley v. Liberty Mutual Fire Insurance Co.*, 168 Ariz. 306, 812 P.2d 1124 (App. 1991). There, an insurer's agent handed a UIM offer form to the insured stating that the insured must sign it to obtain coverage. *Id.* The customer signed the form, unknowingly rejecting UIM coverage. *Id.* Although the "make available" provision was not directly at issue in light of the agent's misleading conduct, and without citing any supporting authority or the seemingly conflicting holding in *McCloe*, the court held that the phrase "make available" obligates an insurer

to "offer such coverage in a way reasonably calculated to bring to the insured's attention that which is being offered" and found that a question of fact existed on that issue. *Id.* at 306-07, 812 P.2d at 1124-25.

¶13     Ballesteros cites *Giley* for the proposition that an English form is not reasonably calculated to bring to a Spanish speaker's attention that UM/UIM coverage is being offered. After *Giley*, however, this Court addressed the obligations imposed by § 20-259.01 in *Tallent v. National General Insurance Co.*, 185 Ariz. 266, 915 P.2d 665 (1996). We held there that the requirement to "offer" UM/UIM coverage under § 20-259.01 was guided by general principles of contract law. *Id.* at 267-68, 915 P.2d at 666-67. We cited with approval the Second Restatement of Contracts' definition of an offer as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id.* at 268, 915 P.2d at 667 (quoting Restatement (Second) of Contracts § 24). Thus, whether an offer has been made does not depend on the offeree's understanding of the terms of the offer, but instead on whether a reasonable person would understand that an offer has been made and that, upon acceptance, the offeror would be bound. *Lopez v. Charles Schwab Co.*, 13 Cal. Rptr. 3d 544, 548 (Ct. App. 2004) ("[T]he pertinent inquiry is whether the

individual to whom the communication was made had reason to believe that it was intended as an offer." (quoting *Donovan v. RRL Corp.*, 27 P.3d 702, 709 (Cal. 2001))); *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 286 (Iowa 1995) ("The test for an offer is whether it induces a reasonable belief in the recipient that he can, by accepting, bind the sender." (quoting *Architectural Metal Sys., Inc. v. Consol. Sys., Inc.*, 58 F.3d 1227, 1229 (7th Cir. 1995))). As a result, we held that § 20-259.01 "does not require the offer to contain an explanation" of UM/UIM coverage. *Tallent*, 185 Ariz. at 267, 915 P.2d at 666.

¶14 The parties do not dispute that Ballesteros was offered UM/UIM coverage on a form approved by the DOI. Ballesteros claims only that he did not understand the form. Under contract principles, however, the test is objective: Whether an offer was made turns only on whether a reasonable person would understand that a proposal of terms was made, not on Ballesteros's subjective understanding of the offer form. The offeree need not understand the content of an offer in order to bind the offeror. Therefore, the "written notice" provision of § 20-259.01 does not require translation of the offer into Spanish so that a Spanish speaker understands the offer's terms; it requires only that the insurer make an offer that, if accepted, would bind the insurer to provide the offered coverage.

¶15    This conclusion comports with the language of § 20-259.01, which does not require a Spanish form.  It is further supported by the fact that the legislature has explicitly required a Spanish translation in other statutes.  *See* A.R.S. §§ 6-631(B), 6-1257, 6-1411, 12-1596, 12-2406(C), 23-906(D), 25-504(C), 31-229(B), 36-504(A), 44-1362(B), 49-542.03 (imposing a Spanish requirement).   That the legislature included this requirement in some statutes, but not in § 20-259.01, indicates that the omission of any such requirement in § 20-259.01 was intentional.  *See Estate of McGill ex rel. McGill v. Albrecht*, 203 Ariz. 525, 530-31, 57 P.3d 384, 389-90 (2002) (refusing to read "gross negligence" into a statute because "[t]he legislature surely knows how to require a showing of gross negligence, having used that term in a great number of statutes").

¶16    Our conclusion is strengthened by the fact that § 20-259.01 once briefly required forms in both Spanish and English. 1997 Ariz. Sess. Laws, ch. 125, § 1 (1st Reg. Sess.).   That requirement was removed just a year after it was enacted.  1998 Ariz. Sess. Laws, ch. 288, § 2 (2d Reg. Sess.).   This history confirms that the legislature did not intend to impose a Spanish-translation requirement in the current statute.  *See State v. Garza Rodriguez*, 164 Ariz. 107, 111, 791 P.2d 633, 637

(1990) (noting presumption that "by amending a statute, the legislature intends to change the existing law").

¶17    In sum, § 20-259.01 does not require that the UM/UIM offer form be provided in Spanish.  If the legislature desires to add such a requirement, it may do so, *see Tallent*, 185 Ariz. at 268, 915 P.2d at 667, but it is not our place to rewrite the statute.

¶18    Ballesteros nonetheless argues that for an insurer to truly "make available" UM/UIM coverage to a Spanish-speaking insured, it must provide a form in Spanish that is "reasonably calculated to bring [the offer] to the insured's attention." *Giley*, 168 Ariz. at 306, 812 P.2d at 1124.  Although we express no opinion whether tort law may impose such a requirement in certain circumstances, we conclude, as did the court of appeals, that § 20-259.01 imposes no such obligation.

### B.   Use of a DOI-approved form

¶19    American Standard argues that, in amending § 20-259.01 in 1992 to permit the use of a DOI-approved form, the legislature intended to provide a method for insurers to demonstrate compliance with the statutory requirement to make a written offer of UM/UIM coverage.  It asserts that it complied with § 20-259.01 by providing Ballesteros with a DOI-approved selection form.

¶20    As noted, the legislature, through a series of

amendments, modified § 20-259.01 to provide that "[t]he selection of limits or rejection of [UM/UIM] coverage by a named insured or applicant on a form approved by the [DOI] director shall be valid for all insureds under the policy." 1992 Ariz. Sess. Laws, ch. 147, § 1 (2d Reg. Sess.); 1994 Ariz. Sess. Laws ch. 304, § 1 (2d Reg. Sess.). The legislature adopted these amendments to remedy the fact-intensive inquiry *Giley* engendered regarding whether the insurer had offered UM/UIM coverage. *See* Arizona State Senate, Minutes of Committee on Commerce and Labor 9, 40th Leg., 2d Reg. Sess. (Apr. 22, 1992) [hereinafter "Senate Committee Minutes"] (noting that insurers are required to "make available" UM/UIM coverage, but that "[t]he law does not specify exactly how this should be made available"); Arizona State Senate, Fact Sheet for H.B. 2062, 40th Leg., 2d Reg. Sess. (May 14, 1992) [hereinafter "Fact Sheet"] (to similar effect); *see also Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 269-70, 872 P.2d 668, 673-74 (1994) (permitting reliance on non-legislators' statements in circumstances providing "sufficient guarantees that the statements reflect legislators' views"). The remedy chosen was to create a method by which insurers may demonstrate compliance with § 20-259.01. Senate Committee Minutes 13-14 (observing that under the amendment "the signing of [the] paper [is] ipso facto the end of the inquiry as to whether [UM/UIM coverage] was meaningfully offered"); Fact Sheet (noting that

the amendment provides "an acceptable procedure for the offering of [UM/UIM] insurance").

¶21    After passage of the 1992 amendment, if an insurer provides and the insured signs a DOI-approved UM/UIM selection form, the insurer has satisfied the statutory requirement to "make available" and "by written notice offer" UM/UIM coverage. Senate Committee Minutes 9 ("[T]he insurance agent can use a form approved by the Director of the Department of Insurance to satisfy [§ 20-259.01]."); Fact Sheet (noting that § 20-259.01 "is satisfied if the insured signs a form approved by the Department of Insurance stating the amount of coverage desired").

¶22    While the 1992 amendment was designed to diminish fact questions, Ballesteros's reading of the statute would replace one fact-intensive inquiry for another. Under *Giley*, the factual determination concerned whether UM/UIM coverage was sufficiently offered. Ballesteros's approach would require consideration of whether the language proficiency of the insured is such that a Spanish form is required and whether the terms of the offer were understood. Agents in the field, however, are not necessarily equipped to determine a client's language proficiency or degree of understanding. Such a requirement may lead in future cases to questions about an offeree's general understanding of the contract terms regardless of the language

in which they are provided in a form. Although § 20-259.01 is remedial in nature, *Calvert v. Farmers Ins. Co. of Ariz.*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985), we nonetheless conclude, as we did in *Tallent*, that imposing a comprehension requirement is "both unwarranted by the statute and unwise," 185 Ariz. at 268, 915 P.2d at 667. We further recognize that the legislature passed the 1992 amendments to protect insurers from after-the-fact inquiries regarding the offer of coverage. To read a language requirement into the statute under the guise of effectuating the remedial purpose would thwart this legislative goal.

¶23     Finally, Ballesteros's approach offers no principled distinction between Spanish speakers and others whose proficiency in English may be limited. Ballesteros proposes that DOI approval of a Spanish form demonstrates that use of that form for Spanish-speaking customers is mandatory, while the DOI's failure to create forms in other languages means that translation into those languages is not required. We find no such import in the DOI sample Spanish form. The DOI Director provides the Spanish form "as a matter of convenience for insurers, rather than as a mandate for use." Brief of the Director of the Arizona Department of Insurance as Amicus Curiae, at 6.

¶24 In sum, because American Standard provided Ballesteros a DOI-approved form, it satisfied § 20-259.01.

## C. Attorney Fees

¶25 American Standard requested attorneys' fees pursuant to A.R.S. § 12-341.01(A). In the exercise of our discretion, we deny that request.

### III. CONCLUSION

¶26 For the reasons set forth, we vacate the opinion of the court of appeals and remand this case to the superior court with instructions to enter partial summary judgment in favor of American Standard on Ballesteros's contract claim.

_____
Rebecca White Berch, Chief Justice

CONCURRING:


_____
Andrew D. Hurwitz, Vice Chief Justice


_____
W. Scott Bales, Justice


_____
A. John Pelander, Justice


_____
Peter B. Swann, Judge*

*Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Peter B. Swann, Judge of the Arizona Court of Appeals, Division One, was designated to sit on this matter.