330 P.3d 1003

Lesley WILKS and Paul Wilks, wife and husband, Plaintiffs/Appellants,

v.

John MANOBIANCO and Sandra Lee Manobianco, husband and wife; John Manobianco Insurance Agency, Inc., Defendants/Appellees.

No. 1 CA–CV 13–0216.

Court of Appeals of Arizona, Division 1.

July 22, 2014.

Tidmore Law Offices LLP, By Mick Levin, Phoenix, Counsel for Plaintiffs/Appellants.

The Hassett Law Firm PLC, By Myles P. Hassett, Julie K. Moen, Jamie A. Glasser, Phoenix, Counsel for Defendants/Appellees.

Presiding Judge PATRICIA K. NORRIS delivered the opinion of the Court, in which Judge SAMUEL A. THUMMA joined. Judge KENT E. CATTANI specially concurred.

## OPINION

NORRIS, Judge:

¶1 The principal issue in this appeal is whether an insurance agent's compliance with Arizona Revised Statutes ("A.R.S.") section 20–259.01(B) (Supp. 2013), a statute that requires insurers to offer uninsured and underinsured motorist coverage to their insureds, bars an insured from asserting a professional negligence claim against an insurance agent for failing to obtain the underinsured motorist coverage the insured requested and the agent agreed to procure. As we explain, the statute does not bar such a claim.

## FACTS AND PROCEDURAL BACKGROUND[1]

¶2 In 2001, Lesley Wilks contacted the John Manobianco Insurance Agency, Inc. seeking a "full coverage" insurance policy for the two vehicles she and her husband owned. The Agency procured a policy for the Wilkses through State Farm Mutual Automobile Insurance Company that included uninsured motorist ("UM") and underinsured motorist ("UIM") coverage. In 2003, the Wilkses switched to another insurer and obtained a policy that also included UM and UIM coverage. In 2004, unhappy with the service they had received from the other insurer, Lesley contacted the Agency.

¶3 Accordingly to Lesley, she told the Agency she "wanted the same insurance back.... I asked for the exact same coverage that I'd had previously, full coverage," which would have included UM and UIM coverage. In response, the Agency told Lesley "they would give me the exact same coverage I had before." Lesley then went to the Agency's office and was "passed a bunch of documents" and asked to "[s]ign here, here, initial." The documents included an Arizona Department of Insurance-approved form ("DOI form") that set out options for the selection or rejection of UM/UIM coverage. Lesley signed but did not look at the DOI form which had been marked to select UM but not UIM coverage. As before, the Agency procured the insurance through State Farm. The State Farm policy provided UM but not UIM coverage.

¶4 In September 2008, an underinsured driver rear-ended Lesley. State Farm denied Lesley's claim for UIM coverage because she had signed the DOI form.

¶5 The Wilkses sued the Agency and its president, John Manobianco, (collectively, the "Agency") for professional negligence in failing to procure the UIM coverage despite Lesley's request "for the exact same coverage [she] had before."[2] The superior court granted summary judgment to the Agency, finding its "compliance with A.R.S. § 20–259.01 demonstrated that [it had] fulfilled [its] duties to Plaintiffs regarding offering the UM/UIM coverage" and had "breached no duty owed to Plaintiffs."

## DISCUSSION

¶6 On appeal, the Wilkses argue the superior court should not have rejected their professional negligence claim against the Agency because it breached its duty of care by failing to procure UIM insurance as part of the coverage Lesley requested. The Agency argues, however, that as a matter of law, it did not breach any duty it may have

---

1. We view the facts and the inferences to be drawn from those facts in the light most favorable to the Wilkses as the party against whom summary judgment was entered. *See Newman v. Cornerstone Nat'l Ins. Co.,* 234 Ariz. 377, 378, ¶3, 322 P.3d 194, 195 (App.2014).

2. The Wilkses also sued State Farm for negligent training. The superior court dismissed this claim on State Farm's motion for summary judgment. The Wilkses have not challenged that ruling, and State Farm is not a party to this appeal.

owed the Wilkses because it complied with A.R.S. § 20–259.01(B) by providing Lesley with a written offer of UIM coverage, which she rejected by signing the DOI form. Reviewing each of these arguments de novo, *Ballesteros v. Am. Standard Ins. Co. of Wis.*, 226 Ariz. 345, 347, ¶ 7, 248 P.3d 193, 195 (2011) (summary judgment and interpretation of statute reviewed de novo), we agree with the Wilkses.

## I. The Wilkses' Professional Negligence Claim Against the Agency

¶ 7 In general, "[a]n insurance agent owes a duty to the insured to exercise reasonable care, skill and diligence in carrying out the agent's duties in procuring insurance." *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 397, 682 P.2d 388, 402 (1984) (quoting *Quality Furniture v. Hay*, 61 Haw. 89, 93, 595 P.2d 1066, 1068 (1979)) (internal quotation marks omitted). Unless A.R.S. § 20–259.01(B) modifies the Agency's duty under these circumstances, *see infra* ¶¶ 11–21, the Wilkses presented a genuine dispute of material fact as to whether the Agency breached this duty by failing to procure a policy with UIM coverage.

¶ 8 As discussed, Lesley asked for the "exact same coverage that [she] had previously, full coverage," which had included UIM coverage. In response, the Agency told her it would "give [her] the exact same coverage [she] had before." According to the Wilkses' standard of care expert, an agent must "review the existing coverage in the prior policy. And make sure, when a client comes in and says they want full coverage, that they are getting what they think they are getting" and "that the coverage is the same as what they had [before]." John Manobianco also agreed an agent has a duty to provide clients with the "appropriate paperwork" so they can obtain the requested coverage. And, although the Agency did not have any records that specified or disclosed the coverages the Agency had procured for

the Wilkses from State Farm in 2001, *see supra* ¶ 2, Manobianco acknowledged the Agency could have called State Farm to obtain this information. This evidence created a genuine dispute of material fact as to whether the Agency exercised reasonable care in carrying out its duties to procure the insurance the Wilkses had requested.

¶ 9 Despite this evidence, the Agency argues the superior court properly granted summary judgment because Lesley signed the DOI form without looking at it. Whether Lesley acted reasonably in signing the DOI form without looking at it or, instead, reasonably relied on the Agency's statement it would "give [her] the exact same coverage [she] had before" presents a question for the finder of fact. *Darner Motor Sales, Inc.*, 140 Ariz. at 398, 682 P.2d at 403 ("We believe that the 'contributory negligence' question here turns on the reasonableness of an insured's failure to read the policy and his reliance on statements made by the agent. It is, therefore, a question for the trier of fact." (citations omitted)); *see also* A.R.S. § 12–2505 (2003) (subject to certain exceptions, claimant's contributory negligence will not bar action, but "full damages" shall be reduced in proportion to relative degree of claimant's fault which proximately caused injury or death). Thus, although Lesley did not look at the DOI form before signing it, her failure to do so does not bar the Wilkses' professional negligence claim as a matter of law.

¶ 10 Accordingly, on the record before us, the Wilkses presented a genuine dispute of material fact as to whether the Agency breached the applicable standard of care by failing to procure for the Wilkses the "exact same coverage" they had before. *See generally Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9, 150 P.3d 228, 230 (2007) (breach is factual issue usually decided by jury).[3]

## II. A.R.S. § 20–259.01(B)

¶ 11 The Agency argues that, as a matter of law, it did not breach any duty of

---

3. The Agency argues Lesley did not request the same coverage she had before because she declined rental car and medical payments coverage. Lesley explained she declined those coverages only after speaking with the Agency about them. The finder of fact will have to decide whether Lesley's explanation undercuts her assertion she asked the Agency for the same coverage she had before.

care because it complied with A.R.S. § 20–259.01(B) by offering Lesley UIM coverage on the DOI form. *See supra* ¶ 3. Section 20–259.01(B), however, is inapplicable here.

¶ 12 Section 20–259.01(B) requires insurers to offer UIM coverage by written notice to the insured. In relevant part, it provides:

Every insurer writing automobile liability or motor vehicle liability policies shall also make available to the named insured thereunder and shall by written notice offer the insured and at the request of the insured shall include within the policy underinsured motorist coverage.... The selection of limits or rejection of coverage by a named insured or applicant on a form approved by the [DOI] director shall be valid for all insureds under the policy.... The offer need not be made in the event of the reinstatement of a lapsed policy or the transfer, substitution, modification or renewal of an existing policy.

*Id.*

¶ 13 As our supreme court explained in *Ballesteros*, A.R.S. § 20–259.01 has evolved to provide insurers certainty and protection from "after-the-fact inquiries regarding the offer of [UM/UIM] coverage." 226 Ariz. at 350, ¶ 22, 248 P.3d at 198. Specifically, through a series of amendments, the Legislature modified A.R.S. § 20–259.01 to provide "[t]he selection of limits or rejection of [UM/UIM] coverage by a named insured or applicant on a form approved by the [DOI] director shall be valid for all insureds under the policy." 1994 Ariz. Sess. Laws, ch. 304, § 1 (2d Reg. Sess.); *see also* 1992 Ariz. Sess. Laws, ch. 147, § 1 (2d Reg. Sess.); *Ballesteros*, 226 Ariz. at 348, ¶ 9, 248 P.3d at 196. Thus, "if an insurer provides and the insured signs a DOI-approved UM/UIM selection form, the insurer has satisfied the statutory requirement to 'make available' and 'by written notice offer' UM/UIM coverage." *Ballesteros*, 226 Ariz. at 350, ¶ 21, 248 P.3d at 198 (citations omitted).

¶ 14 On its face, however, the statute only mentions insurers. And, indeed, only insurers are obligated to "make available" and "by written notice offer" insureds UM/UIM coverage. Based on this wording, the Wilkses argue the statute only protects insurers and

not agents. The plain language of the statute supports the Wilkses' argument. *See Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 296, ¶ 8, 152 P.3d 490, 493 (2007) (cornerstone of statutory construction is rule that language is best and most reliable index of statute's meaning).

¶ 15 Further, consistent with the plain language of the statute, the statutory scheme distinguishes between "insurer" and "agent." Section 20–104 (2002) defines insurer as "every person engaged in the business of making contracts of insurance." In *National Securities, Inc. v. Johnson*, 14 Ariz.App. 31, 33, 480 P.2d 368, 370 (1971), we explained an agent is not a person "engaged in the business of making contracts of insurance." In that case, a lender offered its customers credit life and other insurance policies incidental to the loans it made to them. *Id.* at 32, 480 P.2d at 369. Other companies, however, actually issued the insurance policies. *Id.* The lender argued it was acting as an insurance agent, not an insurer. *Id.* at 33, 480 P.2d at 370. Relying on the same statutory definition of insurer that we have today as well as on other authorities, we held the lender "was not making, or a party to, contracts of insurance with the effect that [it] was not an insurer." *Id.* In so holding, we distinguished between "acting as an agent" and "making insurance," explaining the lender "was not bound to pay holders of the insurance contracts upon the occurrence of any specified events." *Id.* Similarly, here, the Agency was acting as an agent and not as an insurer as that term is used in A.R.S. § 20–259.01(B).

¶ 16 Moreover, the Legislature could have easily included agents in A.R.S. § 20–259.01 if it had intended to do so. Indeed, it briefly did so. In 1997, the Legislature amended A.R.S. § 20–259.01 and required the DOI to "prescribe a consumer information and coverage selection form ... to be signed by the purchaser and to be used by all insurers offering automobile coverage," including UM/UIM coverage. 1997 Ariz. Sess. Laws, ch. 125, § 1 (1st Reg. Sess.). The Legislature required the DOI form to provide for the selection of limits or rejection of such coverage and directed that "[u]se of the form by

an insurer, *agent or broker shall satisfy any duty of an* insurer, *agent or broker* to explain the nature and applicability of automobile liability coverage and related coverages." *Id.* (emphases added).[4] The following year, the Legislature repealed the 1997 amendment. 1998 Ariz. Sess. Laws, ch. 288, § 1 (2d Reg. Sess.).[5] Notably, in repealing the 1997 amendment, the Legislature deleted any reference to agent or broker and reenacted the pre–1997 version of A.R.S. § 20–259.01(B), which had only referenced insurers, not agents or brokers. *Compare* 1997 Ariz. Sess. Laws, ch. 125, § 1 *with* 1998 Ariz. Sess. Laws, ch. 288, § 1. This history demonstrates the Legislature knows how to make the statute applicable to agents. *Cf. Ballesteros*, 226 Ariz. at 349, ¶ 15, 248 P.3d at 197 (Legislature's inclusion of a requirement in some statutes but not in others indicates omission was intentional). And, this history demonstrates the Legislature intended to limit the scope of the current version of A.R.S. § 20–259.01(B) to insurers. *Cf. id.* (Legislature's removal of requirement in A.R.S. § 20–259.01 for DOI form in Spanish one year after requiring such form confirmed Legislature did not intend to impose Spanish translation requirement in current version of statute).

¶ 17 Nevertheless, the Agency argues the "selection of limits or rejection of coverage by a named insured or applicant on a [DOI form] shall be valid" provision in A.R.S. § 20–259.01(B) is sufficiently broad to bar the Wilkses' negligence claim. Even if we could ignore that the provision's purpose was "to protect insurers from after-the-fact inquiries regarding the offer of coverage," *Ballesteros*, 226 Ariz. at 350, ¶ 22, 248 P.3d at 198, and we could construe the provision as providing the same protection to agents, it would not immunize the Agency from its own negligence as alleged here. The Wilkses' professional negligence claim rests on the

Agency's alleged failure to obtain the UIM coverage Lesley requested and the Agency said it would procure, *see supra* ¶ 3, not on any alleged failure to offer or explain UIM coverage.[6] Although A.R.S. § 20–259.01 establishes a method by which insurers may satisfy the statutory requirements to "make available" and "by written notice offer" UM/UIM coverage, it has not abolished all tort law claims and certainly not the type of professional negligence claim at issue here.

¶ 18 Finally, citing *Millers National Insurance Co. v. Taylor Freeman Insurance Agency*, 161 Ariz. 490, 494, 779 P.2d 365, 369 (App.1989), the Agency argues that because an agent is "potentially liable" if it does not make a statutorily compliant offer, an agent who complies with A.R.S. § 20–259.01(B) must be granted the "same protection and certainty as the insurer he represents." We reject this argument for two reasons. First, for the reasons discussed above, A.R.S. § 20–259.01 does not apply to agents. Second, *Millers* does not support the Agency's argument.

¶ 19 In *Millers*, an insurer recovered breach of contract damages from its general agent and subagent after they failed to make a written offer of UIM coverage to one of the insurer's insured. 161 Ariz. at 493, 779 P.2d at 368. On appeal, the agents argued A.R.S. § 20–259.01 did not require them to provide the insured with written notice of the availability of UIM coverage. *Id.* We explained the agents' argument ignored "the fact that a corporation can only act through its employees and agents," *id.*, and "[w]hen an agent undertakes to act for its insurer, the agent must comply with the requirements that are imposed upon its principal," *id.* at 494, 779 P.2d at 369 (citation omitted). Accordingly, we stated the agents had to comply with A.R.S. § 20–259.01 because they were acting for the insurer and when they failed to do so,

---

4. In part, the Legislature amended the statute to "eliminate the litigation that occurs because of the close scrutiny of the circumstances surrounding the offer of uninsured motorist coverage." Ariz. State Senate, Fact Sheet for S.B. 1445, 43d Leg., 1st Reg. Sess. (Apr. 29, 1997).

5. The Legislature repealed the 1997 amendment because of, *inter alia*, complaints from the insur-

ance industry that the consumer information and coverage selection form was an administrative burden. Ariz. State Senate, Fact Sheet for S.B. 1273, 43d Leg., 2d Reg. Sess. (June 25, 1998).

6. Section 20–259.01 does not require an insurer to explain UM/UIM coverage. *Ballesteros*, 226 Ariz. at 348, ¶ 13, 248 P.3d at 196.

they were liable to the insurer for the insurer's loss.

¶ 20 *Millers* does not support the Agency's argument that the statutory protections of A.R.S. § 20–259.01 should extend to an agent because the agent may be contractually liable to an insurer when it fails to comply with A.R.S. § 20–259.01 on the insurer's behalf. *Millers* merely recognizes that the relationship between an insurer and its agent is governed by the law of agency and when an agent breaches its contractual duties to act for the insurer, the agent will be responsible for the resulting damages.

## CONCLUSION

¶ 21 For the foregoing reasons, we reverse the superior court's judgment in favor of the Agency and remand for further proceedings consistent with this opinion. Because the Wilkses are the prevailing party on appeal, we award them their costs on appeal contingent upon their compliance with Arizona Rule of Civil Appellate Procedure 21.

CATTANI, Judge, specially concurring.

¶ 22 I agree that there is a genuine issue of material fact regarding whether John Manobianco breached the applicable standard of care for an insurance agent by failing to procure the coverage Lesley and Paul Wilks requested, and I thus concur in the Majority's holding that the superior court incorrectly granted summary judgment in favor of Manobianco and his insurance agency. I write separately, however, because I believe the Majority unnecessarily focuses on whether litigation immunity under A.R.S. § 20–259.01(B) applies to insurance agents.

¶ 23 After acknowledging that compliance with § 20–259.01(B) forecloses litigation against *insurers* who provide a written offer of underinsured motorist coverage, the Majority opines that the statute does not foreclose litigation against insurance *agents* under the same set of circumstances. *See supra* ¶ 17. But reading the statute to protect not only insurers, but also agents, would in my view be consistent with § 20–259.01(B)'s directive that an insured's choice after having been provided a written offer of underinsured motorist coverage "shall be valid for all insureds," and would further the Legislature's intent to protect against "after-the-fact inquiries regarding the offer of coverage." *Ballesteros v. Am. Standard Ins. Co. of Wis.*, 226 Ariz. 345, 350, ¶ 22, 248 P.3d 193, 198 (2011). In any event, this statutory analysis is unnecessary because, as the Majority points out, the type of negligence asserted here—an insurance agent's alleged failure to comply with a customer's specific request for the same coverage previously provided—relates to a duty different from that addressed by the statute. *See supra* ¶ 17.

¶ 24 I agree with the Majority that the Arizona Supreme Court's decision in *Ballesteros* does not address the type of claim at issue here, and that § 20–259.01(B) only forecloses claims relating to a duty to offer or explain the nature of underinsured motorist coverage. In *Ballesteros*, the court held that by providing an English version of the form contemplated under § 20–259.01(B), an insurance company foreclosed a claim that the company breached its contractual duty to offer underinsured motorist coverage notwithstanding the insureds' alleged inability to understand English. 226 Ariz. at 348–49, ¶¶ 14–17, 248 P.3d at 196–97. The court also noted, however, that it was not opining on "whether tort law may impose such a requirement in certain circumstances." *Id.* at 349, ¶ 18, 248 P.3d at 197.

¶ 25 Here, the Wilkses have not asserted that Manobianco failed to offer or explain underinsured motorist coverage, but rather that he failed to look up their previous coverage and to ensure that the same coverage was being provided. Thus, I agree with the Majority that the duty Manobianco is alleged to have breached is distinct from and independent of the duty to offer and explain addressed in § 20–259.01(B). Having reached that conclusion, however, in my view, further statutory analysis is unnecessary. Accordingly, I do not join in the portion of the Majority's opinion that addresses whether § 20–259.01(B) applies to insurance agents.