NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
*Plaintiff/Appellee,*

*v.*

CONNOR BALZAN, *Defendant/Appellant.*

No. 1 CA-CV 23-0564
FILED 05-30-2024

Appeal from the Superior Court in Maricopa County
No. CV2022-007634
The Honorable Frank W. Moskowitz, Judge

**AFFIRMED**

COUNSEL

Hill, Hall & DeCiancio PLC, Phoenix
By Joel DeCiancio, Christopher Robbins
*Counsel for Plaintiff/Appellee*

Mick Levin P.L.C., Phoenix
By Mick Levin
*Counsel for Defendant/Appellant*

------

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Anni Hill Foster and Vice Chief Judge Randall M. Howe joined.

------

**F U R U Y A**, Judge:

**¶1**        Appellee Connor Balzan was injured in an April 5, 2019 auto accident. Because the at-fault driver's insurance did not fully cover his damages, Connor made an underinsured motorist ("UIM") claim against his insurer, Appellee State Farm Mutual Automobile Insurance Company ("State Farm"). State Farm paid UIM policy limits under two of five applicable automobile policies but declined to pay benefits under the other three, citing the policies' anti-stacking provisions. State Farm then sued for declaratory relief and prevailed on summary judgment.

**¶2**        Connor challenges that ruling, contending he may stack UIM benefits under two additional policies. For the reasons set forth below, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶3**        At the time of the accident, Connor was insured under a State Farm automobile policy that covered a Hyundai he primarily drove and provided $250,000 in UIM benefits ("Hyundai Policy"). Connor made premium payments on the Hyundai Policy.

**¶4**        Connor's parents, Russell and Kimberly Balzan, purchased and are listed as named insureds on four other State Farm automobile policies ("Household Policies"), each of which also provided $250,000 in UIM benefits. Premium payments for three of the Household Policies, which insured a Jeep, a Mercedes, and an Infiniti, were made from a checking account owned by Russell and Kimberly. The fourth policy insured a Kia primarily driven by Connor's sister, Madison Balzan ("Kia Policy"). Initially, the Kia Policy premium payments were made with Kimberly's credit card and Madison reimbursed Kimberly for those payments. At some point, Madison started directly paying the premiums for the Kia Policy, and Connor contends she later became a named insured on the Kia Policy.

2

¶5         After recovering policy limits from the other driver involved in the accident, Connor made a UIM benefits claim with State Farm. State Farm paid UIM policy limits under the Hyundai Policy and one Household Policy. It declined to pay UIM benefits under the other policies, citing the anti-stacking provision included in all five policies, which reads as follows:

> If multiple policies or coverages purchased from the *State Farm Companies* by one *insured* on different vehicles provide Underinsured Motor Vehicle Coverage which applies to the same accident or claim, the *insured* shall select one of these policies or coverages to apply to the accident. Only the one policy selected by the *insured* shall apply and no coverage will be provided by any of the other policies.

State Farm contended Connor could not recover additional UIM benefits because Russell and Kimberly purchased the Household Policies and, as a married couple, constituted "one insured."

¶6         State Farm later filed this declaratory relief action and moved for summary judgment. Connor cross-moved for summary judgment, contending four different insureds purchased the applicable policies and, therefore, he could stack UIM benefits under four policies. Specifically, he argued (1) Russell and Kimberly were two insureds, not one, and (2) Madison purchased the Kia Policy.

¶7         The superior court granted State Farm's motion and denied Connor's motion. This appeal followed. We have jurisdiction under Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") §§ 12-120.01(A)(1), -2101(A)(1).

## DISCUSSION

¶8         Summary judgment is warranted only if there are no genuine issues of material fact, and one party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). In determining whether either party is entitled to summary judgment on cross-motions, we review questions of law de novo and view the facts in a light most favorable to the party against whom summary judgment was granted. *Matter of Est. of Podgorski*, 249 Ariz. 482, 484 ¶ 8 (App. 2020).

¶9         Arizona law requires every insurer who writes motor vehicle liability policies to offer UIM coverage. A.R.S. § 20-259.01(B); *State Farm Auto. Ins. Co. v. Orlando*, 256 Ariz. 55, 61 ¶ 10 (App. 2023). Our supreme court has previously said "the legislature intended a broad application of

UIM coverage to provide benefits up to the policy limits whenever the insured is not indemnified fully by the available limits of liability." *Taylor v. Travelers Indem. Co. of Am.*, 198 Ariz. 310, 315 ¶ 15 (2000). We therefore construe § 20-259.01 liberally, keeping in mind the statute's purpose is "to guarantee that responsible drivers will have an opportunity to protect themselves and their loved ones as they would others." *Blevins v. Gov't Emps. Ins. Co.*, 227 Ariz. 456, 459 ¶ 14 (App. 2011) (quoting *Est. of Ball v. Am. Motorists Ins. Co.*, 181 Ariz. 124, 127 (1995)).

¶10　　　　The only express statutory limitation on UIM coverage is the anti-stacking provision of § 20-259.01(H). *Orlando*, 256 Ariz. at 63 ¶ 18. Anti-stacking allows insurers to limit coverage "when an insured obtains coverages for several vehicles and then attempts to claim multiple UIM coverages for the same accident." *Am. Fam. Mut. Ins. Co. v. Sharp*, 229 Ariz. 487, 491 ¶ 15 (2012). Anti-stacking provisions are valid if they are unambiguous and follow the statute. *State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 331 (1995).

¶11　　　　The anti-stacking provision of the State Farm policies, quoted above, largely mirrors subsection (H), which provides:

> If multiple policies or coverages purchased by one insured on different vehicles apply to an accident or claim, the insurer may limit the coverage so that only one policy or coverage, selected by the insured, shall be applicable to any one accident.

A.R.S. § 20-259.01(H). Connor does not contend policies' anti-stacking provision meaningfully differs from § 20-259.01(H). Additionally, the parties agree State Farm paid UIM policy limits under the Hyundai Policy and one Household Policy. The only issue we decide, therefore, is whether Connor can recover additional UIM benefits under other applicable policies.

## I.　Russell and Kimberly Are Not "One Insured" Who Purchased the Jeep, Mercedes, and Infiniti Policies, But This Does Not Permit Stacking.

¶12　　　　Connor first contends he can recover UIM benefits under a third policy because "the Balzan family's policies make Russel Balzan an insured and Kimberly Balzan another insured" and, therefore, "Kimberly Balzan and Russel Balzan are two insureds." State Farm, for its part, relies on our opinion in *State Farm Mut. Auto. Ins. Co. v. Lindsey*, 180 Ariz. 456 (App. 1994), *vacated*, 182 Ariz. 329 (1995). There, applying community

property principles, we held a married couple was "one insured" for anti-stacking purposes because both spouses were "joint purchasers and owners of all three policies" at issue. *Id.* at 461.

**¶13** Our supreme court vacated our opinion in *Lindsey*. *Lindsey*, 182 Ariz. at 332. State Farm contends it "remains good law and controls in this case" because it was vacated on other grounds. It does not. *See Fisher v. Edgerton*, 236 Ariz. 71, 75 ¶ 11 n.4 (App. 2014) ("The court of appeals' vacated decision has no precedential value."). Thus, State Farm's reliance is misplaced.

**¶14** Connor concedes on appeal that "the funds used to purchase the insurance policies attributable to [Russell and Kimberly] were community property and the insurance policies themselves are community property." He argues, however, that "the relevant inquiry is not where the money comes from or who owns the insurance policies, but rather, how many insureds purchased multiple policies." Russell and Kimberly are both named insureds under the Jeep, Mercedes, and Infiniti policies, and either of them, if injured in an accident caused by an underinsured motorist, would be entitled to UIM benefits. *See* A.R.S. § 20-259.01(B) (stating that UIM coverage "extends to and covers all persons insured under the policy"). Thus, they are two insureds, not one. And, so far as his argument goes, we agree with Connor that if the legislature wanted to treat married couples as one insured for purposes of § 20-259.01(H), it would have expressly done so. We will not insert language into § 20-259.01(H) the legislature did not include. *See Ballesteros v. Am. Standard Ins. Co. of Wis.*, 226 Ariz. 345, 349 ¶ 17 (2011) ("[I]t is not our place to rewrite [§ 20-259.01].").

**¶15** But Connor's argument stops short of qualifying him for the relief he requests. Holding that married couples are not considered one insured for anti-stacking purposes under § 20-259.01(H) is not synonymous with holding that anti-stacking cannot apply when multiple individuals jointly purchase multiple policies. Connor cites no authority suggesting policies jointly purchased by two insureds are not subject to anti-stacking limitations in the same manner as those purchased by only one insured. Indeed, permitting multiple insureds who jointly purchased multiple policies to apply separate UIM coverages to a single claim would defeat the purpose and effect of § 20-259.01 and the express language of the policies' anti-stacking provisions. *See Mendelsohn v. Superior Ct. in & for Maricopa Cnty.*, 76 Ariz. 163, 169 (1953) ("The court when construing a statute should give it a sensible construction, such as will accomplish the legislative intent and if possible avoid an absurd conclusion or avoid making the statute invalid."). A better construction, aligned with the policy language and

intent, is to enforce an election for coverage by one jointly insured purchaser under one jointly purchased policy as binding against all other jointly insured purchasers of that policy. Such an interpretation preserves the independent nature of each insured purchaser and accommodates joint purchase with shared funds, without compromising the effect and purpose of the anti-stacking provisions when policies are jointly purchased.

¶16         Under the facts of this case, Russell and Kimberly are both insureds under the Household Policies who jointly purchased those policies. Because Russell and Kimberly are both insureds who purchased the Household Policies, both are jointly subject to the limitations described by the policies' anti-stacking provisions. And because the policies have joint purchasers, an election to apply one Household Policy's UIM coverage to a single accident or claim precludes stacking of any of the others under the express language of the policies' anti-stacking provisions. In other words, Russell's election for UIM coverage is binding as Kimberly's election on any policy they jointly purchased as insureds and vice versa. We therefore conclude the anti-stacking provision bars Connor from recovering UIM benefits under more than one of the Household Policies. *See Sharp*, 229 Ariz. at 491 ¶ 15 ("The most reasonable interpretation of Subsection (H) is that the phrase 'multiple policies or coverages' applies when *an insured* obtains coverages for several vehicles and then attempts to claim multiple UIM coverages for the same accident." (Emphasis added.)).

## II.    Madison Did Not Purchase the Kia Policy.

¶17         Connor raises a different argument as to the Kia Policy, contending he can recover UIM benefits thereunder because Madison purchased it. But he only presented evidence showing premiums during the applicable timeframe were "paid directly by [V]isa in the name of Kimberly . . . and reimbursed to Kimberly . . . by Madison." Reimbursing her mother for premium payments does not make Madison a purchaser under § 20-259.01(H). *See Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, 414 ¶ 19 (2023) (citing dictionaries defining "purchase" as "[t]he act or an instance of buying" or "to obtain by paying money or its equivalent").

¶18         Connor also argues "a jury could conclude that it was the reasonable expectation that the payment plan for Madison's vehicle was intended to make Madison . . . the purchaser of the insurance policy." He offered no evidence to suggest State Farm knew or should have known Madison was reimbursing Kimberly for premium payments. In any event, the reasonable expectations doctrine does not aid him. Under that doctrine, we will not enforce unambiguous provisions in standardized forms "which,

because of the nature of the enterprise, customers will not be expected to read and over which they have no real power of negotiation." *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 143 Ariz. 383, 394 (1984). The Kia Policy is a standardized form, but Connor does not contend its anti-stacking provision conflicts with § 20-259.01(H). State Farm did not violate reasonable expectations by limiting UIM coverage in a manner permitted by statute. *See Farmers Ins. Co. of Ariz. v. Voss*, 188 Ariz. 297, 298 (App. 1996) ("When the [policy] term at issue is one specifically authorized by statute, it cannot be characterized as unusual or unexpected . . . [or] be said to emasculate apparent coverage.").

**¶19** Connor also contends his parents told their insurance agent the Kia "was Madison's vehicle" but State Farm "did not put her name [on the policy] until we pointed the mistake to them recently." This fact is irrelevant to the analysis of whether Madison purchased the Kia Policy as a named insured, thereby making that policy distinct from the Household Policies for anti-stacking purposes. On this record, Madison was not a named insured when the accident occurred; Russell and Kimberly were the Kia Policy named insureds from November 2018 through May 2019. That she was later added is likewise irrelevant to the question of who purchased the Kia Policy.

**¶20** Connor also presented evidence suggesting Madison started directly paying Kia Policy premiums. There is no evidence showing when she started making premium payments, but that change plainly happened after the Kia Policy was purchased. Connor therefore did not show that Madison purchased the Kia Policy as an insured.

## CONCLUSION

**¶21** We affirm summary judgment for State Farm. We do not award attorneys' fees because neither side requested them. State Farm may recover its taxable costs incurred in this appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

